## Romie Rasor v. The State.

### No. 6665.   Decided May 31, 1922.

#### Rehearing Denied November 8, 1922.

1.—Wilful Desertion of Child—Insufficiency of. the Evidence.

Where, upon trial of child desertion, under Article 640a, P. C., the record showed on appeal that there was no wilful withdrawal of support by the father or wilful failure to take care of his children, or wilful desertion of said children, the conviction could not be sustained.

2.—Same—Requested Charge—Practice on Appeal.

Where it is not shown that the requested charge was presented to the court, it cannot be considered on appeal.

Appeal from the County Court of Travis.   Tried below before the Hon. G. S. Matthews.

Appeal from a conviction of child desertion; penalty, a fine of $250. The opinion states the case.

*E. C. Gaines,* for appellant.—Cited Furlow v. State, 182 S. W. Rep., 308; Windham v. State, 192 id., 248; Verse v. State, 193 id., 303; Green v. State, 206 id., 93; Wallace v. State, 210 id., 206; Mercardo v. State, 218 id., 491; Woodward v. State, 218 id., 760; Hood v. State, 220 id., 550; Flowers v. State, 221 id., 290; Hollein v. State, 224 id., 779; Barrow v. State, 225 id., 63; Reid v. State, 229 id., 324; O'Brian v. State, 234 id., 668; Bobo v. State, 235 id., 878.

*R. G. Storey,* Assistant Attorney General, for the State.

LATTIMORE, Judge.—Appellant was convicted of a violation of Article 640a of our Penal Code which forbids the wilful desertion, neglect or failure to support a minor child under the age of sixteen, and his punishment fixed at a fine of $250.

From the record we are called on to decide only the question as to whether the verdict finding appellant guilty and assessing said fine was supported by the evidence. There are no bills of exceptions in the record. Appellant asked three special charges, two of which were given, and the refusal of the third is in no condition to be considered by us because of the fact that neither in the document itself nor by any writing thereon, nor by a bill of exceptions, is it made to appear that said charge was presented to the court after the evidence was introduced and prior to the beginning of the argument as is required by statute. There are many authorities holding that in such condition a charge presents nothing for the consideration of this court.   .

Article 640a of Vernon's P. C., defines the offense charged against appellant which for purpose of our discussion, may be divided into three propositions: (1) Did appellant desert, neglect or refuse to provide for the support and maintenance of his two children aged respectively two and three years? (2) If so, was such conduct wilful or without justification? (3) If those two matters be shown, then were such children in destitute or necessitous circumstances? One may fail in his duty to his children, but may be unable to do otherwise, in which event it could not be said that he would be guilty because his conduct would be lacking in the element of wilfulness or want of justification. So one may wilfully fail in his duty to such children if they be so situated as not to need his help, and not be guilty. What of this case? The complaint was filed in August, 1921. The time laid therein as the date of the offense was July of the same year. Appellant lived in Dallas. The children with their mother lived in Austin. Appellant and his wife were divorced. No disposition of the children was made in the divorce proceedings. The duty of their support and maintenance rested equally upon each parent, other things being equal. As the children were small, there seemed no objection on the part of appellant to their remaining with the mother. He visited them often and contributed to their support as more specifically set forth hereafter. He and their mother often discussed a remarriage but the matter was never consummated. They differed as to the amount contributed by appellant after the divorce. She said that from January, 1920, to May, 1921, he contributed $197. He said is was $381. In his testimony will be found the following statement:

"With reference to how much I undertook to furnish them or averaged furnishing them during a month, well, I thought, since the children were with her and they small, that I would try to send an ordinary amount since she was to help me support them, and we attempted to get along with twenty-five or thirty dollars each month."

From January 1, 1920, to May, 1, 1921, would be sixteen months. Basing the estimate at $25 per month, the lowest amount named by him in the above quotation, this would amount to $400. If the mother was correct in her testimony, he gave her for these children less than half what the parties seemed to have agreed was fair. If appellant is correct, he gave her nearly the entire amount. The jury passed on the truth and settled by their verdict conflicting testimony. Letters written by the mother to appellant during said period were in evidence. They mentioned no neglect, desertion or refusal to support on his part during the period prior to May, 1921. From that date to the time of trial it seems uncontested that he had contributed nothing to the support of said children. Nor is he shown to have made any inquiry as to their welfare or health, or to have done anything for them during said months, except that it appears on

Sunday preceding the trial he went to see them and their mother would not permit him to do so. There appears no reason or excuse for this apparent negligence on his part or refusal to support said children after April, 1921, except as may be concluded from the fact that on June 11th he married another woman.

It thus seems at the time of the filing of the complaint, to-wit: in August, 1921, appellant had with apparent wilfulness and without justification both neglected and failed to provide for the support and maintenance of said children during May, June and July. There remains but the question as to whether they were in destitute and necessitous circumstances. The Legislature is supposed to write laws in words expressive of their intent. The words herein used are "destitute or necessitous." We would not be inclined to hold these words to be but repetition of the same description, but will try to give to each its own meaning. In the Century dictionary we find the word "destitute" defined as "Without means; indigent; poor; needy." In the same work the word "necessitous" is defined as "pressed by poverty; unable to procure what is necessary for one's station." That these two children were without property, income or other means of support save as same came from the contributions of the father and mother, is apparent. That they were wholly unable to procure the necessaries of life except as same were given to them is equally apparent. Appellant made $164 per month. The mother made $70. When appellant wholly withdrew his support on May 1st, and further withheld same, who is there to say that these children were not left in destitute and necessitous circumstances? True, the mother testified that she often went without things she needed in order that her babies might have food and care, and no one gave evidence that the children were ever cold or hungry, or became public charges. The mother and her children were living on $70 per month—for home, food, clothing, medical attention, etc., as well as some one to care for the children while the mother worked to provide for them. Other women testified that during this time they had seen the mother go without food that she needed. They had found her destitute of money and had lent her small sums to buy food with and until her pay day came. Appellant says if she had called on him he would have sent her money. Does it lie in his mouth to say that by this toiling woman his attention must be called to what parental love and the dictates of fatherhood as well as the commands of our statute, would seem to indicate that he should do without prompting? We do not think so. We are inclined to think that the desertion of little children by a parent is to be viewed in somewhat different light from a case where the desertion is charged as being of a wife by her husband. A wife may be able to make her wants known to her husband, and if she failed to let him know that she was in need, there might appear

some excuse for the failure on his part to promptly and regularly remit money for her support. No such reasoning obtains where the parties deserted, neglected or left unsupported are little children. The duty and attitude of both the father and mother to them under this statute is fixed by the law itself, and neither could take refuge behind the proposition that they had received no notice of the fact that their offsprings needed care, support and attention.

We are only discussing this record in the light of the proposition that the verdict of a jury will not be overturned by us unless there be such lack of evidence to warrant said verdict as will make it manifest that a wrong has been done that the verdict and judgment rendered are without support. We are unable to conclude that such is the condition in the case before us. In Williams v. State, 89 Texas Crim. Rep., 560, 232 S. W. Rep., 507, we used the following language:

"Neither do we think that one who abandons his wife or children may seek justification by claiming that he knew they had relatives who would take care of them and not let them suffer. Very few people are permitted to suffer for food or clothing in this country of ours, where generosity abounds and orphanages extend their welcoming hands to those who are deprived of shelter and home, but such facts afford neither excuse nor justification to those who are charged by the law of nature and the law of the land with the primary duty of caring and providing for such children."

In Reid v. State, 88 Texas Crim. Rep., 364, 226 S'. W. Rep., 408, we upheld a conviction where the appellant's claim was that he had made an arrangement by which he thought his children would be cared for upon the payment of a stipulated sum monthly by him, and that notwithstanding his failure to continue the payments, the children were cared for by the people with whom he had placed them, and discussing this we said:

"An arrangement to care for helpless children for a stipulated amount from month to month could be used as an excuse for permanent adandonment, and the charitable kindness of those who create orphanages to care for such children could be made cities of refuge for those who have not cared for their own."

Finding no reversible error in the record, the judgment will be affirmed.

*Affirmed.*

ON REHEARING.

November 8, 1922,

LATTIMORE, Judge.—Appellant insists on rehearing that no witness swore that his children at any time were in destitute or needy circumstances, and that no such state of facts is detailed as justified our conclusion or the verdict and judgment. We have again reviewed

the facts. The testimony of Mrs. Rasor and her letters to appellant which were in evidence, seem to reflect the fact that prior to May, 1921, appellant contributed with reasonable regularity to the support of his children. She got a divorce from appellant in December, 1919, at which time she testified that he gave her $380. In June, 1920, she went to live with her mother, taking the children with her. She secured a position paying her $70 per month. She says she paid $25 of this each month to her mother. The mother's husband and son also contributed to the family's support. In addition to the money given her at the time of her divorce, appellant continued to send her other amounts. In April, 1921, Mrs. Rasor wrote to him acknowledging the receipt of $20 and some toys. The letter was in evidence and its contents evince appreciation of the thoughtfulness and kindness of appellant. The complaint herein was filed in July and the case tried in August following. We find in Mrs. Rasor's testimony the following:

"At present my children are not in need and destitute. I am supporting my children, working and taking care of my babies. It is a fact that they are not destitute, because at present I am supporting them and giving them absolutely whatever they need; whatever they need to eat and to wear, I am getting that for them, and they are not actually in need of any necessaries that I know of."

Mrs. Rasor's mother was placed on the stand as a witness for the State and testified as follows:

"These children are not in destitute circumstances. As to why they are not, well, my son was twenty-three years old on the 15th of June, and he told me, he says, 'Mamma, if she will let that man alone and never speak to him again, I will devote my whole life to her children.' I am able to support them, we have never gone hungry, and they are not destitute and they are not in necessitous circumstances. I have never seen them in necessitous circumstances. I know that, I am not just guessing, I have them in my possession, they are with me all the time. I mean to say that these children were not at any time in destitute or necessitous circumstances and that I am able to help take care of them; they have not been at any time in destitute or necessitous circumstances. It is not a fact that they have needed for anything or that these children have been in needy and destitute circumstances, they never have as far as I am concerned."

In another place this witness further said:

" I still stick to it, that since she has been at my house they have not been in destitute or necessitous circumstances for anything, I know they haven't, we never go hungry, and they have had plenty to wear and to eat."

These facts appear in the testimony of the State witnesses. It is our custom in trying to settle the sufficiency of the evidence to support

a verdict, to look mainly to the State's testimony. If we turn to the testimony of the defence in this case we find a number of witnesses testifying to appellant's constant care and affection for his children. Weighing all the evidence for the State in a careful effort to see if it presents a case wherein any actual destitution or need on the part of said children appeared as a result of the failure of appellant to contribute to their support from May, 1921 to the date of trial, we are constrained to say that we believe we were mistaken in our original conclusion. We do not think the record evidences any wilful withdrawal of support, or failure to take care of, or wilful desertion of said children by appellant prior to May, 1921. So believing we feel impelled to grant this motion for rehearing and direct a reversal, and it is so ordered.

*Reversed and remanded.*